# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0484
════════════

AMERICAN STAR ENERGY AND MINERALS CORPORATION, PETITIONER,

v.

RICHARD "DICK" STOWERS, RICHARD W. STOWERS,
FRANK K. STOWERS AND LINDA SUE JASURDA, RESPONDENTS

════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS
════════════════════════════════════════════════════════

**Argued October 14, 2014**

JUSTICE BROWN delivered the opinion of the Court.

In this case we must decide whether Texas partnership law requires a plaintiff seeking to enforce a partner's liability for a partnership debt to sue the partner within the limitations period on the underlying claim against the partnership. Here, a judgment creditor attempted to collect from a partnership after litigating a contract claim for over a decade and a half, only to find the partnership insolvent. When the creditor sought a judgment against the individual partners, the trial court ruled the limitations period began when the underlying cause of action accrued. Because that period had passed, limitations precluded pursuit of the partners' assets. The court of appeals affirmed. We hold today that the limitations period against a partner generally does not commence until after final

judgment against the partnership is entered. Because this action was brought within that period, we reverse the court of appeals' judgment.

**I**

In 1980, the four respondents (together, the Partners) formed S & J Investments, a Texas general partnership, to invest in and manage certain oil and gas properties. S & J and American Star Energy and Minerals Corporation were parties to an agreement that governed operation of those properties. In the early 1990s, American Star sued S & J for breach of that agreement and eventually prevailed on its claims. S & J appealed that judgment, and a court of appeals reversed it in part and remanded the case to the trial court. *See S & J Invs. v. Am. Star Energy & Minerals Corp.*, No. 07-99-0090-CV, 2001 WL 1380027, at *6 (Tex. App.—Amarillo Nov. 7, 2001, pet. denied) (not designated for publication). In 2007, the trial court awarded American Star a second judgment, and S & J again appealed. The court of appeals affirmed that judgment, and we denied review of its decision. *See S & J Invs. v. Am. Star Energy & Minerals Corp.*, No. 07-07-0357-CV, 2008 WL 2669665, at *5 (Tex. App—Amarillo July 8, 2008, pet. denied) (mem. op.).

S & J owes American Star $227,884.46 under the judgment. But S & J proved to be undercapitalized, and its assets cannot satisfy the judgment debt. In June 2010, American Star brought this action seeking a judgment against the Partners individually. In response, the Partners argued the action was barred by the four-year statute of limitations that applies to the underlying breach-of-contract claim. Both sides moved for summary judgment. The trial court granted the Partners' motion and ordered that American Star take nothing. A divided court of appeals affirmed, holding the limitations period began when the underlying breach-of-contract claim against the

2

partnership accrued, barring this suit. 405 S.W.3d 905, 906–07 (Tex. App.—Amarillo 2013). American Star sought this review.

## II

A Texas partnership is "an entity distinct from its partners." TEX. BUS. ORGS. CODE § 152.056. Though that has not always been clear, the Legislature "'unequivocally embrace[d] the entity theory of partnership'" when it enacted the Texas Revised Partnership Act (TRPA), since codified in the Texas Business Organizations Code.[1] *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 464 (Tex. 2011) (quoting TEX. REV. CIV. STAT. ANN. art. 6132b-2.01 cmt. (Vernon Supp. 2010) (Comment of Bar Committee—1993)) (alteration in original). As an independent entity, a partnership may enter into contracts in its own name, may own its own property, and may sue and be sued in its own name. *See* TEX. BUS. ORGS. CODE § 152.101; TEX. R. CIV. P. 28.

Nonetheless, under the TRPA, a partner remains "jointly and severally liable for all obligations of the partnership." TEX. BUS. ORGS. CODE § 152.304(a). This personal liability, undoubtedly an aggregate-theory feature, is a defining characteristic of the partnership form and distinguishes it from other entity types. *Cf. id.* § 152.801(a) ("[A] partner is not personally liable . . . for any obligation of the partnership incurred while the partnership is a limited liability partnership."); *id.* § 101.114 ("[A] member or manager is not liable for a debt, obligation, or liability of a limited liability company . . . ."); *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) ("A bedrock principle of corporate law is that an individual can incorporate a business and thereby

---

[1] The parties disagree whether the TRPA or the recodified version applies to this case. There is no substantive difference in the provisions we apply today. Though we refer to the law applied as TRPA, we cite to the codified version for practicality's sake.

normally shield himself from personal liability for the corporation's contractual obligations.") (collecting cases); *see also* 1 ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP § 1.03(c)(4) (2012) ("The personal liability of partners is perhaps the most important aggregate feature of partnership . . . .").

Through its scheme for enforcing that liability, however, the TRPA imposes even on this aggregate feature an entity aspect. *See* TEX. REV. CIV. STAT. ANN. art. 6132b-305 cmt. (Vernon Supp. 2010) (Comment of Bar Committee—1993) (stating the TRPA's enforcement provisions "are consistent with the emphasis on the partnership as an entity"). "A judgment against a partnership is not by itself a judgment against a partner," so a creditor must obtain a judgment against the partner individually. TEX. BUS. ORGS. CODE § 152.306(a). A creditor may attempt to do so in the suit against the partnership or in a separate suit. *Id.* § 152.305. It may not, however, seek satisfaction of the judgment against a partner until a judgment is rendered against the partnership. *Id.* § 152.306(b)(2)(A). On top of that, the TRPA generally requires time to collect the debt from the partnership first: the judgment against the partnership must go unsatisfied for ninety days before a creditor may proceed against a partner and his assets.[2] *Id.* § 152.306(b)(2)(C). The enforcement of a partner's liability is considered the most confusing aspect of partnership law. *See* ROBERT A. RAGAZZO & FRANCES S. FENDLER, CLOSELY HELD BUSINESS ORGANIZATIONS 193 (2d ed. 2012) (quoting 2 BROMBERG & RIBSTEIN, *supra*, § 5.08(a)). Still, "[t]he passage of time, in conjunction

---

[2] The TRPA allows a creditor to forego this satisfaction period if (1) the partnership is in bankruptcy, (2) the parties have agreed to waive the period, (3) a court orders so after finding that the partnership assets are clearly insufficient or that the satisfaction period is excessively burdensome, or (4) the partner's liability arises independently of his status as a partner. TEX. BUS. ORGS. CODE § 152.306(c). None of those exceptions apply here.

4

with the plain language of the TRPA's text, forecloses any argument that the Legislature rejected any aspect of the entity theory." *Allcat*, 356 S.W.3d at 467.

**III**

Despite the Legislature's efforts to define the relationship between a partner and the partnership and to control the circumstances under which a partner's liability may be enforced, it did not expressly dictate when a suit against a partner must be brought. The Partners argue that because American Star could have sued them in its original suit against S & J, this cause of action accrued and limitations on this suit began to run at the same time as on the suit against S & J—at the breach of the underlying agreement. American Star, on the other hand, insists the Partners owed no obligation until the judgment against S & J became final in 2009, and the limitations period began then. The parties agree that a four-year limitations period applies to this action. They further acknowledge this action was brought more than four years after the underlying cause of action accrued but within four years of the judgment against S & J.

Generally a cause of action accrues "when facts come into existence [that] authorize a claimant to seek a judicial remedy," "when a wrongful act causes some legal injury," or "whenever one person may sue another." *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) (citations omitted); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (citations omitted); *Luling Oil & Gas Co. v. Humble Oil & Ref. Co.*, 191 S.W.2d 716, 721 (Tex. 1945) (citation omitted). The resulting limitations period functions "to compel the exercise of a right of action within a reasonable time." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) (citation omitted). However,

5

"[w]hen the [L]egislature employs the term 'accrues' without an accompanying definition, the courts must determine when that cause of action accrues and thus when the statute of limitations commences to run." *Id.* at 351–52, 354 (refusing to apply the discovery rule to a wrongful-death action, but noting that it would have applied had the applicable statute of limitations not specifically fixed the point of accrual). "'[T]o determine [accrual] in any particular case is to establish a general rule of law for a class of cases . . . .'" *Id.* at 351 (quoting *Fernandi v. Strully*, 173 A.2d 277, 285 (N.J. 1961)) (other citations omitted).

The statutes of limitations applicable here use the term "accrues" but do not specify when accrual occurs. *Compare* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3) (providing limitations period for a debt cause of action), *and id.* § 16.051 (providing residual limitations period), *with id.* § 16.003(b) ("The cause of action [for wrongful death] accrues on the death of the injured person."). We are thus left to establish a rule of accrual for partner-liability suits, which "'must be founded on reason and justice.'" *Moreno*, 787 S.W.2d at 351 (quoting *Fernandi*, 173 A.2d at 285) (other citations omitted). Reason requires us to consider the TRPA's overall scheme and the legislative intent expressed therein. *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004) (stating "[w]e must read the statute as a whole" and "consider the objective the law seeks to obtain" (citations omitted)). Justice requires us to examine the rule's policy implications and equity of its consequences. In light of a partnership's status as a separate entity and the statutory prerequisites to proceeding against a partner, we hold that the cause of action against a partner does

6

not accrue until a creditor can proceed against a partner's assets—that is, generally at the expiration of the ninety-day satisfaction period.[3]

## A

As a result of the partnership's statutorily confirmed status as a separate entity, a partnership's acts are only its own, not a partner's. *Cf. Allcat*, 356 S.W.3d at 468 ("Individual partners do not own [partnership income and profits] while they remain in the partnership's hands and have not been distributed to the partners." (citations omitted)). Here, it was S & J that was party to and breached the agreement with American Star. The Partners, separate entities by statute, were not in privity with American Star, and they committed no wrongful act and caused no legal injury. *See S.V.*, 933 S.W.2d at 4. Surely, the Partners are liable for S & J's breach, but only by operation of the statute. An effect of the entity theory is that a partner's liability is wholly derivative of the partnership's liability.

The statutory prerequisites to enforcement make a partner's liability not only derivative of the partnership's liability, but contingent on it for all practical purposes. If a partnership obligates itself to pay a sum or perform a service under a contract, the individual partners, though liable for the obligation under the TRPA, cannot immediately be called on to pay or perform in lieu of the partnership. In either case, the claim must be litigated against the partnership so that its obligation is determined, reduced to damages, and fixed in a judgment. *See* TEX. BUS. ORGS. CODE § 152.306(b)(2)(A). Second, the plaintiff-creditor must have ninety days' opportunity to satisfy that judgment from the partnership's assets. *Id.* § 152.306(b)(2)(C).

---

[3] Because the satisfaction period applies here, we do not address accrual when a creditor may proceed directly against a partner under Texas Business Organizations Code section 152.306(c).

Considering the derivative and contingent nature of that liability, the only obligation for which a partner is really responsible is to make good on the judgment against the partnership, and generally only after the partnership fails to do so. *See* 1 BROMBERG & RIBSTEIN, *supra*, § 1.03(c)(4) ("Under [the entity theory], the partners are essentially guarantors of an independent partnership debt rather than being directly responsible."); *cf.* UNIF. P'SHIP ACT § 307 cmt. 4 (1997) ("[The Revised Uniform Partnership Act's exhaustion requirement] respects the concept of a partnership as an entity and makes partners more in the nature of guarantors than principal debtors on every partnership debt."). The significance of joint and several liability in the partnership context is that once that the prerequisites are met, a creditor can seek the whole debt from one party and is not required to join all the partners, obtain judgments against them, or apportion liability among them. *Cf.* 2 BROMBERG & RIBSTEIN, *supra*, § 5.08(g) (stating the exhaustion requirement defeats the joint-and-several characterization). This scheme defers a partner's liability, and as a result a creditor cannot seek a judicial remedy from a partner until these prerequisites are met. *See Exxon Corp.*, 348 S.W.3d at 202. Because a creditor's rights against a partner do not arise when the partnership incurs an obligation, we define accrual as occurring when those rights arise. *See S.V.*, 933 S.W.2d at 3 ("[Limitations] quicken diligence by making [a claim] in some measure equivalent to a right . . . ." (quoting *Gautier v. Franklin*, 1 Tex. 732, 739 (1847)) (internal quotation marks omitted)).

The TRPA allows a partner to be sued in the action against the partnership or in a separate action, and our definition of accrual in an action against the partner is consistent with that permissive rule. *See* TEX. BUS. ORGS. CODE § 152.305. Especially considering its enforcement scheme, this rule

suggests the Legislature considers the collection action to be separate from the underlying litigation. The only practical reason to sue a partner separately is to be able to sue him later—a concurrent separate suit would presumably be consolidated or sit pending disposition of the case against the partnership. The most likely time, if not the only logical time, a plaintiff would do so is when the partnership fails to satisfy the judgment. Though the time required here to obtain the judgment against S & J is probably extraordinary, this case illustrates that litigation of such claims can continue well beyond the applicable limitation periods. In allowing separate suits, the Legislature must have contemplated that at least some subsequent actions against partners would be brought outside of the original limitations period. *See* UNIF. P'SHIP ACT § 307 cmt. 2 (1997) ("[Allowing separate suit of partners] will simplify and reduce the cost of litigation, especially in cases of small claims where there are known to be significant partnership assets and thus no necessity to collect judgment out of the partners' assets."). While American Star could have named the Partners in the original suit, doing so would not change the result here: American Star would not have been able to pursue the Partners' assets until after the judgment was finalized in 2009. *See* TEX. BUS. ORGS. CODE § 152.306(b)(2)(C)(ii) (providing the satisfaction period as to a contested partnership judgment begins only once a stay on execution expires).

Despite this specific statutory context, the Partners and the court of appeals would apply to this suit the general rule of accrual as stated in *Luling Oil & Gas*: "[W]henever one person may sue another[,] a cause of action has accrued." 191 S.W.2d at 721 (citation omitted). That rule is not, however, universal. For example, a cause of action for indemnity does not accrue "until the

9

indemnitee's liability to the party seeking damages becomes fixed and certain," generally by a judgment. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 208 (Tex. 1999) (citations omitted). Still, "an indemnitee may bring a claim against an indemnitor before the judgment is assigned against the indemnitee"—before the cause of action accrues and before limitations begin to run. *Id.* at 209 (citing *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992)); *City of San Antonio v. Talerico*, 81 S.W. 518, 520 (Tex. 1904) ("It is permitted by our law to bring into the suit against it the party whom it seeks to hold liable as an indemnitor, . . . but this does not make the limitation applicable to the cause of action of the plaintiff control its action over against the indemnitor."). This rule is based on our interest in judicial economy. *See Getty Oil*, 845 S.W.2d at 799 ("Forcing the indemnity suit to wait for judgment in the liability suit 'would contravene the policy of the courts to encourage settlements and to minimize litigation.'" (quoting *K & S Oil Well Serv., Inc. v. Cabot Corp.*, 491 S.W.2d 733, 739 (Tex. Civ. App.—Corpus Christi 1973, writ ref'd n.r.e.))).

Similarly, *Luling Oil & Gas*'s rule does not readily apply to the partnership-liability context. In that case, we addressed a garden-variety contract action between a seller and buyer of oil and gas interests. *See* 191 S.W.2d at 718–19, 721–22 (noting the contract "fixed the rights and obligations of the parties" and gave the seller "the right to compel" the relief sought). "*In this situation*," we held, "the statute of limitation begins to run at the time when a suit could be commenced upon the claim asserted." *Id.* at 722 (emphasis added) (citation omitted). Here, there is no evidence that S & J's agreement with American Star imposed any obligation on the Partners or gave American Star the right

10

to compel anything of the Partners. Further, the TRPA's scheme mirrors aspects of our indemnity jurisprudence and serves as a legislative basis for excepting suits against partners from the general accrual rule.

The Partners and the court of appeals also rely on the TRPA's requirement that the judgment against a partner must be "based on the same claim" as the judgment against the partnership to argue this suit is really a suit on the underlying contract obligation. *See* TEX. BUS. ORGS. CODE § 152.306(b)(2). If the judgment created an independent cause of action, the Partners argue, American Star could not satisfy this statutory prerequisite. We are not persuaded. This suit is to enforce liability created by the TRPA, not the agreement, but it is still *based* on American Star's underlying contract claim, consistent with the statute.

Federal courts applying the TRPA have reached the same conclusion we reach today. *See Evanston Ins. Co. v. Dillard Dep't Stores, Inc.*, 602 F.3d 610, 617 (5th Cir. 2010) (holding a cause of action to recover against partners of law firm successfully sued for trademark infringement accrued on entry of judgment against the firm, at the earliest); *In re Jones*, 161 B.R. 180, 183 (Bankr. N.D. Tex. 1993) ("Under the entity theory of partnerships, it is logical that a partner has no liability until the partnership liability is established."). The Partners cite lower-court precedent to argue that the federal-court decisions are contrary to Texas law, which they insist has always required partners to be individually named and served within the limitations period running from the underlying claim.[4]

---

[4] *See Mathew v. McCoy*, 847 S.W.2d 397, 400 (Tex. App.—Houston [14th Dist.] 1993, no writ) (holding no judgment could be taken against partners who were not added and served within the limitations period running from the underlying claim); *Partee v. Phelps*, 840 S.W.2d 512, 514–15 (Tex. App.—Dallas 1992, no writ) (holding res judicata barred suit against partners); *Cothrum Drilling Co. v. Partee*, 790 S.W.2d 796, 800 (Tex. App.—Eastland 1990, writ

11

Those cases, however, were decided under the Texas Uniform Partnership Act (TUPA), the TRPA's predecessor, and contain no meaningful discussion of relevant statutory partnership law. The TUPA did not expressly follow the entity theory and did not impose the prerequisites to proceeding against a partner. *See Allcat*, 356 S.W.3d at 463–64 (stating that though the TUPA "'lean[ed] heavily toward the entity idea,'" the TRPA was passed "'to allay previous concerns that stemmed from confusion as to whether a partnership was an entity or an aggregate of its members'" (citations omitted) (alteration in original)); *Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 63 (Tex. 2008) (stating the TUPA contained no provision similar to the TRPA's liability-enforcement provision). The Partners unconvincingly argue the Legislature confirmed the rule applied in these cases when it codified the TRPA into the Business Organizations Code without overruling those decisions. On the contrary, the TRPA's passage eliminates any instructive or persuasive value those decisions may have once had. We therefore decline to rely on them.

**B**

Our holding does not disturb the policy purposes behind limitations. They exist "to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available." *Moreno*, 787 S.W.2d at 351 (citation omitted). In the partnership context, these concerns are addressed by the limitations period applying to the underlying cause of action against a partnership. Here, by suing S & J within the statute of limitations on the claim, American Star *did* exercise its contract right of action within a reasonable time. This

---

denied) (holding statute governing service on partnership "does not authorize a judgment against the partners who were not served before the claims against them were barred by the statute of limitations" (citations omitted)).

12

action to collect the judgment debt from the Partners does not require relitigation of that claim. At issue is only whether the judgment exists and whether the Partners were in fact partners at the time of injury alleged. Applied here, the limitations period running from the underlying claim "would fail to serve the underlying purpose of limitations and instead would be a purely formal exercise." *See Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990) (citation omitted).

The Partners argue that this suit imposes "automatic" liability and undermines their due-process rights. They point to *Kao Holdings*, in which we said partners "should be both named and served so that they are on notice of their potential liability and will have an opportunity to contest" that liability. 261 S.W.3d at 64. There, we overturned a judgment against a partner who had not been named or served at all, either in the original suit against the partnership or in a separate suit. *Id.* at 65. In doing so, we simply applied the TRPA's rule that a judgment against a partnership is not by itself a judgment against a partner. *Id.* at 63–64. The Partners' liability is not automatic—this action naming them personally is required to establish it. They have the same opportunity to contest their liability as they would have had were they sued within the underlying limitations period.

More generally, the Partners were on notice of their potential liability when they agreed to form and do business as a partnership. The partnership form has built-in mechanisms to provide further notice of any impending liability. First, each partner has a right to manage and conduct partnership business. TEX. BUS. ORGS. CODE § 152.203(a). When a partnership is sued, the litigation presumably becomes part of that business. Second, each partner owes to the others a duty of care. *Id.* § 152.204(a)(2). When a partnership is served with a lawsuit, that duty may require the partner served to apprise the other partners. *See Zinda v. McCann St., Ltd.*, 178 S.W.3d 883, 890 (Tex.

13

App.—Texarkana 2005, pet. denied) ("Partners have a duty to one another to make full disclosure of all matters affecting the partnership . . . ." (citations omitted)). Third, partners can agree to provide notice of pending litigation to one another in their partnership agreement. *See* TEX. BUS. ORGS. CODE § 152.002 ("[A] partnership agreement governs the relations of the partners and between the partners and the partnership."). Though the Partners would have us presume our holding causes them harm, we are not persuaded. We have declined in some instances to recognize a special accrual date where the policies underlying limitations outweigh any justification for doing so. *See, e.g.*, *Robinson v. Weaver*, 550 S.W.2d 18, 22 (Tex. 1977) (declining to apply the discovery rule to cases involving medical misdiagnosis). This is not such an instance.

Similarly, our holding avoids the injustice of a partner shielding himself from liability through limitations where their policy purposes are not served. *See Matthews Constr.*, 796 S.W.2d at 694 (refusing to apply limitations where doing so "would effectively permit the corporate form to be used as a 'cloak for fraud'" (citation omitted)); *Moreno*, 787 S.W.2d at 351 ("[Courts] have consciously sought to apply [limitations] with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary individual injustices." (quoting *Fernandi*, 173 A.2d at 285) (other citations omitted)). A party doing business with a partnership does so knowing that if the partnership fails on its obligations, relief is not wholly subject to the adequacy of the partnership assets. Conversely, individuals who choose the partnership form as the vehicle for their enterprise do so knowing that their personal assets are on the line. Equity demands we leave these expectations undisturbed where a plaintiff proceeds as the law allows.

\* \* \*

14

The Legislature has gone to great lengths to address enforcement of a partnership debt against a partner. The court of appeals did not see in the TRPA's scheme legislative intent to supersede our more general limitations jurisprudence. We do, and that intent spurs our determination today. Accordingly, we hold that limitations does not bar American Star's suit against the Partners.[5] We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

_____

Jeffrey V. Brown

Justice

OPINION DELIVERED: February 27, 2015

_____

[5] The Partners argue that "[t]olling or any other basis to suspend the running of limitations" was not presented to the trial court and cannot serve as grounds for reversal. American Star's argument at all stages concerns when limitations *began*, however, not that they were tolled or suspended. "Deferring accrual and thus delaying the commencement of the limitations period is distinct from suspending or tolling the running of limitations once the period has begun." *S.V.*, 933 S.W.2d at 4. Our holding today does the former.